**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **RON AND ELIZABETH** | § | |
| **LANINGHAM, as next friend to** | § | |
| **SAMANTHA SANCHES** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **CASE NO. 3:08-CV-1559-BF** |
| | § | |
| **CARROLLTON-FARMERS BRANCH** | § | |
| **INDEPENDENT SCHOOL DISTRICT** | § | |
| | § | |
| **Defendant.** | § | |

---

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

---

Donald G. Henslee
State Bar Number:  09488500
Meredith Prykryl Walker
State Bar Number:  24056487
Henslee Schwartz llp
6688 N. Central Expressway, Suite 850
Fort Worth, Texas  75206
Telephone: (214) 219-8833
Fax: (214) 219-8866

Attorneys For Defendant
Carrollton-Farmers Branch ISD

**TABLE OF CONTENTS**

I.    BACKGROUND SUMMARY .............................................................. 1

II.   INTRODUCTION. ........................................................................ 2

III.  STANDARD FOR SUMMARY JUDGMENT. ................................... 15

IV.   ARGUMENT AND AUTHORITIES ............................................... 18

      A    Introduction to Arguments.. ..................................................... 18

      B.   Defendant is Entitled to Summary Judgment as to Plaintiff's Title IX
           Claim. .................................................................................. 18

           1.    Sanches Was Not Subjected to Gender Based Discrimination. .... 19

           2.    Sanches Was Not Subjected to Severe, Pervasive and Objectively
                 Offensive Harassment by Other Female Students. ...................... 20

           3.    Sanches Was Not Deprived of An Educational Opportunity. ....... 22

           4.    The District Was Not Deliberately Indifferent to Allegations of
                 Harassment. .................................................................... 23

      C.   Defendant is Entitled to Summary Judgment as to Plaintiffs' Equal
           Protection Claims. ................................................................. 26

           1.    Plaintiffs' Claims Should Be Dismissed Because Sanches Was Not
                 Deprived of Any Constitutionally Protected Interest. ................. 27

           2.    Plaintiffs' Claims Should Be Dismissed Because There Is No
                 Evidence That the District Differentiated Between Any Suspect
                 Classifications. ............................................................... 29

           3.    The Plaintiffs Cannot Establish Municipal Liability by
                 Demonstrating a Policy, Custom or Practice that Directly Caused
                 any Injuries to Sanches. .................................................... 30

                 a.    Identification of the final policy maker. ........................ 31

                 b.    Identification of the custom or policy. .......................... 31

                 c.    Deliberate indifference and causation. .......................... 32

-ii-

V.      CONCLUSION.. ................................................................................................. 33

CERTIFICATE OF SERVICE.. ...................................................................................... 35

## **TABLE OF AUTHORITIES**

**Federal Cases:**                                                                              Page

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). .................................................... 17

*Albright v. Oliver*, 510 U.S. 266 (1994). ......................................................................... 27

*Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373 (5th Cir. 2002). ...................................................................................................................... 15

*Benjamin v. Metro. Sch. Dist. of Lawrence Twp.*, 2002 U.S. Dist. LEXIS 8517 (S.D. Ind. Mar. 27, 2002)................................................................................................................. 19

*Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985)......................................................................................................................... 30

*Board of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397 (1997)..... 30,31

*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536 (5th Cir. 2005). ...................................... 16

*Brennan v. Stewart*, 834 F.2d 1248 (5th Cir. 1985) ........................................................ 29

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). ......................................................... 15,16

*City of Canton v. Harris,* 489 U.S. 378 (1989)................................................................ 32

*City of Houston v. Piotrowski,* 237 F.3d 567 (5th Cir. 2001). ...................................... 31,32

*City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988)........................................................ 31

*Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629 (1999)........................ 18,19,21,23,24

*De la O v. Hous. Auth. of El Paso*, 417 F.3d 495 (5th Cir. 2005). ................................... 18

*Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531(5th Cir. 2002) .................. 17

*DIRECT TV Inc. v. Robson*, 420 F.3d 532 (5th Cir. 2006)............................................... 16

*Doe v. Beaumont ISD*, 8 F.Supp. 2d 596 (E.D. Tex. 1998). ............................................ 33

*Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412 (5th Cir.1997). .................................. 30

*Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308 (5th Cir. 1995). ................................ 16

-iv-

*Edwards v. Johnson*, 2000 U.S. App. LEXIS 8191 (5th Cir. 2000). ............................... 29

*Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52 (11th Cir. 2002). ................................... 19

*Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163,* 315 F.3d 817 (7th Cir. 2003). ....................................................................................................... 19,20,21,24

*Garrett v. Dallas Public Schools*, 1999 U.S. Dist. LEXIS 19735 (N.D. Tex. 1999)........ 27

*Gonzalez v. Ysleta Indep. School Dist.,* 996 F.2d 739 (5th Cir. 1993)......................... 31,32

*Hardy v. University Interscholastic League,* 759 F.2d 1233 (5th Cir. 1985). ................. 28

*Hart v. Hairston*, 343 F.3d 762 (5th Cir. 2003). .............................................................. 16

*Hearth, Inc. v. Department of Public Welfare*, 617 F.2d 381 (5th Cir. 1980). ................ 27

*Hunt v. Smith*, 67 F. Supp. 2d 675 (E.D. Tex. 1999). ...................................................... 27

*Ibby v. Sullivan*, 737 F.2d 1418 (5th Cir. 1984). ............................................................. 29

*Jesuit College Preparatory Sch. v. Judy*, 231 F. Supp. 2d 520 (N.D. Tex. 2002). ........... 28

*Jett. v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241 (5th Cir. 1993). ........................................ 31

*Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997). ...................................................... 29

*Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291 (5th  Cir.1987). ..................... 16

*Lewis v. Glendel Drilling Co.,* 898 F.2d 1083 (5th Cir.1990). ......................................... 17

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990). ........................................................ 17

*Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347 (5th Cir. 2005). ....................................... 16

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). .......................................... 15,17

*Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275 (5th Cir. 2001). ............................. 16

*Malacara v. Garber*, 353 F.3d 393 (5th Cir. 2003). ........................................................ 18

*Matsushita Electric Industrial Corporation v. Zenith Radio Corp.*, 475 U.S. 574 (1986)........................................................................................................ 16

*Monell v. City of New York*, 436 U.S. 658 (1978). ................................................. 30,31,32

*Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377 (5th Cir. 1998)...................... 17

*Nevares v. San Marcos Consol. Indep. Sch. Dist.,* 111 F.3d 25 (5th Cir. 1997)............. 27

*Niles v. University Interscholastic League,* 715 F.2d 1027 (5th Cir. 1983), *cert. denied,* 465 U.S. 1028 (1984)........................................................................................... 28

*Oklahoma City v. Tuttle,* 471 U.S. 808 (1989). ................................................................ 32

*Olabisiomotosho v. City of Houston*, 185 F.3d 521 (5th Cir. 1999). ............................... 17

*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998)............................................. 20

*Owen v. City of Independent,* 445 U.S. 622 (1980). ......................................................... 30

*Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002). ................................................ 32

*Piwonka v. Tidehaven Independent School Distict*, 961 F. Supp. 169 (S.D. Tex. 1997). 28

*Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410 (5th Cir. 2003). 17

*Stokes v. Bullins,* 844 F.2d 269 (5th Cir. 1988). .............................................................. 31

*Walsh v. Louisiana High Sch. Athletic Ass'n,* 616 F.2d 152 (5th Cir. 1980). .................. 28

*Watkins v. La Marque Indep. Sch. Dist.*, 308 Fed. Appx. 781, 2009 U.S. App. LEXIS 1500 (5th Cir. Tex. 2009). .................................................................................. 19,20,21

*Wells v. Hico Independent School District*, 736 F.2d 243 (5th Cir. 1984) *cert. dismissed* 473 U.S. 901 (1985)........................................................................................... 27

*Wilson v. Beaumont Indep. Sch. Dist.,* 144 F. Supp. 2d 690 (E.D. Tex. 2001) . .... 21,24,25

**State Cases:**

*Eanes Indep. Sch. Dist. v. Logue*, 712 S.W.2d 741, 742 (Tex. 1986).............................. 28

*In re University Interscholastic League*, 20 S.W.3d 690, 692 (Tex. 2000)...................... 28

*NCAA v. Yeo*, 171 S.W.3d 863 (Tex. 2005)..................................................................... 28

*Spring Branch I.S.D. v. Stamos* 695 S.W.2d 556 (Tex. 1985)......................................... 28

*Sullivan v. University Interscholastic League*, 616 S.W.2d 170 (Tex.1981)................... 29

**Federal Constitutions:**

U.S. Const. amend. XIV.................................................................... 2,18,26,27,29,33,34

**Federal Statutes:**

20 U.S.C. §1681......................................................................... 1, 2,18,19,20,22,23,26,33

42 U.S.C. § 1983........................................................................ 2,18,26,27,30,31,33,34

**Texas Statutes:**

Tex. Educ. Code §11.051. ............................................................................. 31

Tex. Educ. Code § 11.151. ........................................................................... 31

**Rules:**

Fed. R. Civ. P. 56............................................................................... 1,15,16,18

Rule 56.3, Local Rule of the United States District Court
for the Northern District of Texas. ....................................................................... 1

Rule 56.5, Local Rule of the United States District Court
for the Northern District of Texas. ....................................................................... 1

**Administrative Materials:**

Office for Civil Rights, HEW, Elimination of Sex Discrimination in Athletic Programs,
Memorandum to Chief State School Officers, Superintendents of Local Education
Agencies, and College and University Presidents (Sept. 1975) ...................................... 22

Letter from Dr. Mary Frances O'Shea, National Coordinator for Title IX Athletics, Office
for Civil Rights to Mr. David V. Stead, Executive Director, Minnesota State High School
League (Apr. 11, 2000) ......................................................................... 22,23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RON AND ELIZABETH LANINGHAM, as next friend to SAMANTHA SANCHES | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CASE NO. 3:08-CV-1559-BF |
| CARROLLTON-FARMERS BRANCH INDEPENDENT SCHOOL DISTRICT | § § § | |
| Defendant. | § § | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant Carrollton-Farmers Branch Independent School District, ("CFBISD" or the "District") and pursuant to Federal Rule of Civil Procedure 56 and Local Rules 56.3 of the United States District Court for the Northern District of Texas and Local Rule 56.5 of the United States District Court for the Northern District of Texas, submit this its Brief in Support of its Motion for Summary Judgment and respectfully would show the Court the following:

### I.
### BACKGROUND SUMMARY

On September 4, 2008, Plaintiffs filed this case in the United States District Court for the Northern District of Texas, Dallas Division. Plaintiffs' Original Complaint asserts claims for alleged violations of Title IX of the Education Amendments of 1972 (hereinafter

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

"Title IX"), the Equal Protection clause of the 14th Amendment of the United States Constitution (hereinafter "14th Amendment") and the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983 (hereinafter "Section 1983".) Specifically, Plaintiffs claim that their daughter was harassed by other female students in violation of Title IX, the Equal Protection Clause of the 14th Amendment and Section 1983; and, as a result, their daughter failed to be selected as a high school cheerleader.  Defendant CFBISD filed its Original Answer in this matter on September 29, 2008. Since that date the parties have conducted written discovery in this matter and have taken numerous oral depositions.

## II.
## INTRODUCTION

Plaintiffs Elizabeth Laningham and Ron Laningham are, respectively,  the mother and step-father of Samantha Sanches. (Defendant's Appendix p. 315-316). Sanches has been a student in the Carrollton-Farmers Branch Independent School District since the fifth grade. (Defendant's Appendix p. 317). Starting her freshman year, Sanches was a student at Creekview High School.(Defendant's Appendix p. 317).

Sanches started cheerleading in the eighth grade. (Defendant's Appendix p. 320). Rather than being an enjoyable experience, virtually all of Sanches' participation in cheerleading has been marked with controversy instigated by Plaintiffs. (Defendant's Appendix pp. 5-14, 20-73, 78-197, 208-224). By Plaintiffs' own account, Mrs. Laningham has complained about over thirty separate issues relating to cheerleading. (Defendant's Appendix pp. 5-14, 20-73, 78-197, 208-224, 342-413).

Plaintiffs complaint about Creekview cheerleading began before Sanches even started high school.(Defendant's Appendix pp. 362-365). Faced with the fact that Sanches did not have the skill necessary to make the final cut for freshman cheerleader, Mrs.

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Laningham protested another child's selection and forced the District to add Sanches to the freshman squad. (Defendant's Appendix pp. 362-365). During Sanches' freshman year, Mrs. Laningham also attempted to have a student removed as captain from the freshman team because that child had kissed Sanches' boyfriend. (Defendant's Appendix pp. 78-83, 242-244, 365-367). Mrs. Laningham alleges that this incident constitutes "sexual harassment" of her daughter. (Defendant's Appendix p. 409). Not content to complain to District administration, Mrs. Laningham went on the radio to publically complain about a thirteen (13) year old girl kissing her daughter's supposed boyfriend. (Defendant's Appendix pp. 244, 367-369).

During Sanches' sophomore and junior years at Creekview, Plaintiffs' complaints about the cheer program exploded. During that time Mrs. Laningham complained about: (1) stunting groups (Defendant's Appendix pp. 103-108, 370-372); (2) booster club procedures (Defendant's Appendix pp. 84-102, 347-353); (3) the cheerleader banquet (Defendant's Appendix pp. 112-118, 372-376); (4) the cheerleader video (Defendant's Appendix pp. 120-126, 379-383); (5) underclassmen having to sleep on the floor during a group sleep-over (Defendant's Appendix pp. 377-379); (6) cheerleader captains failing to communicate (Defendant's Appendix p.109); (7) jump sequences for homecoming (Defendant's Appendix p. 119, 386-387); and, (8) coaches gifts (Defendant's Appendix pp. 110-111, 351-352, 358-360). In addition to her complaints about cheerleading, Mrs. Laningham complained about: (1) whether her daughter should be disciplined for being tardy (Defendant's Appendix pp. 384-385); and, (2) whether her daughter should be disciplined for discussing details of her mother's sex life during class. (Defendant's Appendix pp. 387-392). With regard to the latter complaint, Mrs. Laningham claims that disciplining Sanches for telling her classmates about

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Mrs. Laningham's sexual history is somehow sexual harassment of Sanches. (Defendant's Appendix pp. 410-411).

Fueled in large part by conflicts between Mrs. Laningham and other cheer parents, a rift developed on the varsity cheerleading squad between the seven junior girls and nine of the senior girls. (Defendant's Appendix pp. 261-262, 274-275, 287-290). The cheerleader coaches attempted to heal this divide by arranging for opportunities over which the squad could bond. (Defendant's Appendix pp. 263-264). However, despite their best efforts, the coaches were unsuccessful. Instead, this led to even more complaints from Mrs. Laningham and more hard feelings between the girls. (Defendant's Appendix pp. 377-379).

During the Spring semester of Sanches' junior year in high school, Mrs. Laningham's complaints about the cheer programs and children on the squad became more frequent. (Defendant's Appendix pp. 127-204, 208-224). In January 2008, Mrs. Laningham submitted to Creekview administration pictures of four senior cheerleaders which she had discovered on a private Facebook page. (Defendant's Appendix pp. 127, 291-292). The pictures depicted the cheerleaders at a local restaurant wearing chef's hats with inappropriate slogans written on the hats. (Defendant's Appendix pp.291-293). At the time the pictures were taken the girls were at the private birthday party of one of the cheerleaders and were not in uniform. (Defendant's Appendix pp.291-293). The Creekview administration investigated this complaint and determined that the pictures were unbecoming for cheerleaders. (Defendant's Appendix p. 132-139, 254). As a result, the administration initially suspended the girls from cheerleading for three weeks. (Defendant's Appendix pp. 132-139, 255-256). When the girls' parents complained about the severity of the discipline for non-school related conduct, the suspension was reduced to the period of one week. (Defendant's

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Appendix pp. 255-256).          One of the girls who was involved in the Facebook incident was senior cheerleader, JH. Following a falling out between JH's mother and Mrs. Laningham, JH became the target of several complaints by Mrs. Laningham.(Defendant's Appendix p. 127, 140-149, 160-197, 208-224, 274-275, 290). For example, Mrs Laningham sought to have JH removed from cheerleading for: (1) putting a pink streak in her hair; (2) having a small tattoo on her foot which was covered by her shoe and sock; (3) being late to practice; (4) being disrespectful; and, (5) allegedly having a coed sleep-over on New Years Eve (Defendant's Appendix p. 140-148, 198-204, 294). During her senior year in high school, JH was repeatedly called to the office to respond to Mrs. Laningham's complaints. (Defendant's Appendix p. 286). Due to the continuous harassment, JH was terrified of Mrs. Laningham. (Defendant's Appendix pp. 284, 289-290). JH and her parents felt that Plaintiffs were running roughshod over the Creekview administration. (Defendant's Appendix pp. 220-222, 286, 298.)

According to Plaintiffs, JH was upset about her suspension over the Facebook incident and threatened to "take down" the party responsible for turning in the pictures. (Defendant's Appendix pp. 167-169). Plaintiffs complained about this alleged "threat." (Defendant's Appendix pp. 167-169). The administration investigated Plaintiffs' complaint. (Defendant's Appendix pp. 74-76, 167-169, 251). Shortly after this incident, an inappropriate picture of Sanches was also found on Facebook. (Defendant's Appendix pp. 128-131). The administration, as they had with the other girls, investigated this complaint and determined that Sanches should also be suspended from cheerleading for a period of one week. (Defendant's Appendix pp. 74, 128-131, 251). Plaintiffs complained about this disciplinary action claiming that it was "harassment" of their child. (Defendant's Appendix

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

pp.6, 199). Apparently, disciplining their daughter in the exact manner in which other girls were disciplined was "harassing" and an opportunity for further complaint. (Defendant's Appendix pp.6, 128-139).

Following the Facebook incidents, Plaintiffs claim that the senior cheerleaders declared that they were going to make the cheerleading tryouts so hard that none of the juniors would make the varsity squad. (Defendant's Appendix pp.166, 393-394). Plaintiffs complained about this alleged statement to Creekview administration and CFBISD central office administration. (Defendant's Appendix p.166, 393-394). The administration tried to explain to Mrs. Laningham that all candidates would be judged on the same routine by independent third party judges and that no candidate would have any advantage over the others. (Defendant's Appendix p. 147). However, this did not satisfy the Plaintiffs. (Defendant's Appendix pp. 145-146).

On March 8, 2008, senior cheerleader captain, KO asked to read a letter to her fellow cheerleaders regarding her disappointment over her last year as a cheerleader. (Defendant's Appendix pp. 160-165). In her letter KO referenced the difficulties she had as captain of the squad as a result of being harassed by parents. (Defendant's Appendix pp. 26164-165). Plaintiffs felt this was exclusively directed toward them and once again complained to Creekview administration. (Defendant's Appendix pp. 160-163). Plaintiffs sought to dictate what other girls were allowed to say about their personal feelings. (Defendant's Appendix pp. 160-163). Creekview administration investigated this matter but did not determine that any disciplinary action as to KO was warranted. (Defendant's Appendix p. 74, 160-163, 251).

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

In March 2008, the cheerleaders held their annual banquet. (Defendant's Appendix p. 397a). At one point during the evening, JH placed a chef's hat on her head, reminiscent of her Facebook photo. (Defendant's Appendix pp. 294a-294b, 397a-397b). District administrators immediately made JH remove the hat. (Defendant's Appendix pp. 256a-256b, 294a -294b, 397a-397b). Despite the fact that the incident was promptly handled, Plaintiffs submitted another complaint about this incident.(Defendant's Appendix p. 150).

In addition to complaining about JH at the banquet, Plaintiffs complained that one of the cheerleading coaches "left the juniors out" while speaking at the banquet. (Defendant's Appendix p.150, 202). They stated that this "humiliated" the juniors and the coach needed to be "held accountable."(Defendant's Appendix p. 150, 202).  Plaintiffs further accused this coach of "shoving" Sanches during a basketball game. (Defendant's Appendix pp. 170-171). Upon investigation by Creekview administration it was discovered that Sanches and her friends were talking to some boys during the national anthem and refusing to go to their correct positions. (Defendant's Appendix pp. 170-171). The coach placed his hand on Sanches' shoulder and told her and her friends to quit talking and to get where they belonged. (Defendant's Appendix pp. 170-171).

Further heightening the tensions between senior cheerleader JH and herself, Sanches began a sexual relationship with JH's boyfriend of three years. (Defendant's Appendix pp. 271-273, 335). On March 26, 2008, JH was on the way to class when she discovered her former boyfriend with Sanches. (Defendant's Appendix pp.281-282). JH then allegedly stated that she was "in the presence of a ho." (Defendant's Appendix pp. 172-182, 282). Sanches immediately called Mrs. Laningham who, in turn, immediately filed a complaint. (Defendant's Appendix pp. 172-182). The Creekview administration promptly investigated

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

this latest complaint about JH by Laningham and determined that JH would be removed from the class she shared with Sanches. (Defendant's Appendix pp. 172-182). While JH was still technically in a cheerleading class with Sanches, by this point in the year, seniors were no longer performing cheer duties in the cheer class. (Defendant's Appendix pp.265, 276-277, 284-285).

In the weeks following the cheer banquet and well before cheerleader tryout for the subsequent school year, Plaintiffs hired legal counsel. Counsel sent a letter to CFBISD central administration once again detailing Mrs. Laningham's litany of complaints about JH and the other senior cheerleaders. (Defendant's Appendix pp.198-204). At this time, Plaintiffs demanded that their daughter be placed on the varsity cheer squad for the upcoming school year without having to tryout and that they be reimbursed for attorneys fees in the amount of $7,500.00. (Defendant's Appendix pp. 198-204).

Further escalating the already heightened tensions among the cheerleading parents, Mrs. Laningham refused to return original photographs to senior cheerleading parents. (Defendant's Appendix pp. 153-158). Mrs. Laningham held these parents hostage by informing them that she had given the photos to her attorney and that she would not return their personal property until her demand that Saches be placed on the varsity cheer squad was met. (Defendant's Appendix pp.153-158). It was not until the senior parents were forced to engage legal counsel that the photos were returned. (Defendant's Appendix pp. 153-158).

During the time period immediately prior to tryouts, Mrs. Laningham continued her relentless e-mail campaign to Defendant and its employees. (Defendant's Appendix p.151-152, 159). Mrs. Laningham e-mailed Michael Cone, a teacher at Creekview, requesting that the powder puff football game be moved to a different date because of the proximity to

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

cheerleading tryouts and supposed concerns over a band trip. (Defendant's Appendix pp.151-152). Mrs. Laningham also e-mailed cheer coach Monica Paul attempting to dictate how and when the cheerleaders should prepare for the Spring show. (Defendant's Appendix pp.159). These constant disruptions over trivial matters caused Creekview teachers and administrators to take time away from the education of students.  (Defendant's Appendix p. 74, 251).

On April 11, 2008, Sanches was in the locker room when she noticed a red mark on her breast.  (Defendant's Appendix p. 184). One of Sanches' friends jokingly remarked that it looked like a "hickey." (Defendant's Appendix p. 184). A rumor then was spread by unknown persons that Sanches had a hickey on her breast.  (Defendant's Appendix pp. 183-184, 276-279).  Sanches believed that JH had started this rumor and informed her mother (Defendant's Appendix pp. 183-184, 276-279). Mrs. Laningham complained to Creekview administration who immediately investigated the rumor. (Defendant's Appendix p. 74, 184-185, 251, 276-279). JH categorically denied having said anything about Sanches and the evidence established that she was not even in the locker room when the incident allegedly happened.   (Defendant's Appendix pp. 185, 276-279, 308).

A few days later, Sanches learned that her boyfriend was still seeing JH.(Defendant's Appendix pp. 186-188, 306a-306c, 333-334).  JH saw Sanches in the hallway crying and stopped to speak with her. (Defendant's Appendix pp.186-188, 306a-306c, 334). JH confirmed that she was having a physical relationship with the boy in question and tried to comfort Sanches by telling her that the boy was "playing" both of them and was not worth Sanches' tears. (Defendant's Appendix pp. 186-188, 306a-306c). Plaintiffs complained about this incident claiming that JH assaulted their daughter when she wiped her hair and

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

tears off her face. (Defendant's Appendix p.186). Creekview administration once again investigated this complaint. (Defendant's Appendix pp. 74-76, 187-188, 251). Creekview administration determined that no action against JH was warranted. (Defendant's Appendix pp. 76, 251).

During the week of cheerleader tryouts for the 2008-2009 school year, Sanches and her parents claimed that JH continued to "harass" Sanches. (Defendant's Appendix pp. 330-332). This alleged harassment consisted of "dirty looks" and JH speaking to her friends about the boyfriend while in Sanches' presence. (Defendant's Appendix pp. 330-332). Plaintiffs complained to Creekview administration regarding this alleged harassment. (Defendant's Appendix pp. 5-14). Creekview administrations investigated this complaint, determined that it was unsubstantiated and determined that no action was necessary. (Defendant's Appendix pp. 74, 251).

One of the senior cheerleaders, KH, was very close friends with Sanches. (Defendant's Appendix p. 300-301, 333). The other senior cheerleaders feared that KH was giving Sanches special tutoring so that she would have an advantage over the other cheerleading candidates for the upcoming school year. (Defendant's Appendix pp. 189-197, 300-301, 303-304, 329). On April 14, 2008, KO, JH, MV and two other students were driving home from classes they were taking at Brookhaven College. (Defendant's Appendix pp. 189-197, 300-301). One of the students lived on the same street as Plaintiffs. (Defendant's Appendix pp. 189-197, 300-301). As the girls drove by Plaintiffs' house, they stopped in front of the house to see if KH was there helping Sanches with the tryout routine. (Defendant's Appendix pp. 189-197, 300-301). Neither Sanches or KH was at the Plaintiffs' home.(Defendant's Appendix p. 300-301, 329a). JH joked that it would be funny to ring

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' doorbell and run away. (Defendant's Appendix pp. 300-301). JH got out of the car, but never even stepped on Plaintiffs' property. (Defendant's Appendix pp. 189-197, 300-301). Mrs. Laningham saw the girls in the road and chased them down the street. (Defendant's Appendix pp. 300-301).

KO, JH and MW were shaken up by the incident and immediately informed their cheerleading coach and Creekview administration about what they had done. (Defendant's Appendix pp. 189, 196-197). Creekview administration investigated the matter and took written statements from the girls. (Defendant's Appendix pp. 190-195). While JH had not actually rang Plaintiffs' doorbell or set foot on Plaintiffs' property, she and the other two cheerleaders acknowledged that they had used poor judgment by stopping in front of Sanches' house. (Defendant's Appendix pp. 191, 302). On April 16, 2008, Creekview administration determined that due to their lapse in judgment, the three senior cheerleaders would not be allowed to participate in the tryout clinic for incoming cheerleaders. (Defendant's Appendix pp. 196-197).

Senior cheerleaders KO, JH and MW felt that Creekview administration had not supported them during Mrs. Laningham's campaign of harassment. (Defendant's Appendix pp. 297-298). They had spent significant amounts of time choreographing the dance routine and preparing for tryouts. As a result of their disappointment on being disallowed from participating in the tryout process, KO, JH and MW immediately resigned from cheerleading. (Defendant's Appendix pp. 196-197, 297-298, 303-306). The other senior cheerleaders, with the exception of Sanches' friend KH, also decided to resign from cheerleading. (Defendant's Appendix pp. 196-197, 297-298, 303-306).

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Following the resignation of the senior cheerleaders, rumors were started that they had "vandalized" Plaintiffs' home. (Defendant's Appendix p. 306). The seniors requested the opportunity to address the remaining cheerleaders to quell these rumors, however, the cheer coaches did not feel that this was productive. (Defendant's Appendix p. 297-298). Mrs. Laningham complained about the very fact that the girls asked to talk to the squad and address the rumors was further harassment of Sanches. (Defendant's Appendix pp. 10, 402). Later that day three of the senior girls were in the hallway and one of them commented that, because of Sanches' mother, their friends were being questioned by lawyers. (Defendant's Appendix p. 11). Mrs. Laningham complained that the seniors were attending tryout clinic after they had resigned. (Defendant's Appendix p. 11). The District investigated these matters and determined that Mrs. Laningham's claims about what had happened were false. (Defendant's Appendix pp. 1-40).

On April 18, 2008, cheerleader tryouts were held for the 2008-2009 school year. (Defendant's Appendix p. 17, 205). Three trained independent judges from an outside cheer organization were responsible for scoring the performance of the cheerleading candidates. (Defendant's Appendix p. 18). All candidates were judged on the same criteria and performed the same cheer and dance routine. (Defendant's Appendix p. 17, 206-207). Based on her performance as compared to the performance of the other candidates, the three independent judges ranked Sanches lower than the sixteen girls chosen for the 2008-2009 varsity cheer squad. (Defendant's Appendix pp. 266, 414).

Plaintiffs were dissatisfied when Sanches did not make varsity cheerleader and filed a formal grievance with the District.(Defendant's Appendix pp. 1-73). In this grievance, Plaintiffs argued that the scoring by the three independent judges was fixed and that Sanches

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

was unfairly scored lower than other girls who she had outperformed.(Defendant's Appendix pp. 12-13, 55). Plaintiffs alternatively argued that if Sanches had not performed well, it was the fault of the senior girls who had purposely made the routine too difficult. (Defendant's Appendix p. 13). Plaintiffs' grievance was heard by two CFBISD administrators who had no prior involvement with the incidents forming the basis for Plaintiffs' complaints. (Defendant's Appendix p. 1, 15, 236a-236c). Plaintiffs were represented by counsel at these grievance hearings. (Defendant's Appendix p. 1, 15, 402-406a). Neither of the hearing officers found any basis to grant Plaintiffs' requested relief. (Defendant's Appendix p. 4, 19, 402-406a). On August 21, 2008 the CFBISD Board of Trustees held a Level III hearing on Plaintiffs' grievance.(Defendant's Appendix p. 406a). The CFBISD Board of Trustees, likewise, did not determine that Plaintiffs were entitled to their requested relief. (Defendant's Appendix p. 406a).

During the pendency of their grievance, Mrs. Laningham continued to complain about the senior girls. Mrs. Laningham claimed that the seniors celebrated Sanches' failure to make cheerleader by: (1) gathering outside to see Sanches' disappointment (Defendant's Appendix p. 13); (2) commenting that Sanches should be embarrassed for not making cheerleading (Defendant's Appendix p. 223-224); and, (3) mocking Sanches on Facebook. (Defendant's Appendix p. 407). The District could not substantiate the complaints brought to their attention. (Defendant's Appendix p. 1-40, 223-224).

Following cheerleader tryouts, Sanches and JH both continued to have a relationship with the same boy. (Defendant's Appendix p. 275a) The young man in question discussed going to the prom with both girls. (Defendant's Appendix p. 275a, 327). Rivalry over this boy came to a head when JH smacked the young man on the rear end and told him that he

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

and Sanches made a cute couple. (Defendant's Appendix p. 306c, 308a, 308b). Sanches reported to her mother that JH had touched her boyfriend.    (Defendant's Appendix p. 408) Mrs. Laningham then filed a complaint stating that JH had "sexually harassed" Sanches by touching the boy's rear end. (Defendant's Appendix p. 208) Creekview administration investigated this matter, took statements from the students and determined that JH had not sexually harassed either the boy or Sanches. (Defendant's Appendix p. 74-77, 208-214, 251).

On May 9, 2008, Sanches told a classmate that JH was pregnant. (Defendant's Appendix p. 215-219). This rumor was untrue and prompted a complaint from JH's parents. (Defendant's Appendix p. 216, 218, 337, 309). Mrs. Laningham claimed that JH had started the rumor herself.(Defendant's Appendix p. 215, 336-337). Mrs. Laningham stated that this was further "sexual harassment" of Sanches. (Defendant's Appendix p. 215, 338). Creekview investigated this matter and could not determine whether or not Sanches had started the rumor.(Defendant's Appendix p. 74-77, 251, 217-219).

Even after all of the girls who allegedly harassed Sanches had graduated, Plaintiffs continued to file complaints over Sanches' failure to make cheerleader.(Defendant's Appendix p. 21-74). Plaintiffs have claimed that Sanches became hysterical during her final performance as a cheerleader. (Defendant's Appendix p. 319a). Plaintiffs also claim that while picking up her schedule, Sanches broke down when she saw the cheerleaders. (Defendant's Appendix p. 318-319).

Throughout this controversy, Sanches has not initiated even one of the complaints.(Defendant's Appendix p. 320, 320a). All complaints were instigated by Mrs. Laningham.  (Defendant's Appendix p. 320, 320a). Contrary to her mother's claims, Sanches has described the alleged harassment as "girl-on-girl." (Defendant's Appendix p. 341).

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

## III.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the non-moving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

If the moving party meets its initial burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Corporation v. Zenith Radio Corp.*, 475 U.S. 574 at 586-587 (1986) (quoting Fed. R. Civ. P. 56(e)); *Celotex*, 477 U.S. 317, 322-23 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987). The non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy--that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

377, 380 (5th Cir. 1998). Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonable find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Anderson*, 477 U.S. at 249; *Lewis v. Glendel Drilling Co.,* 898 F.2d 1083, 1088 (5th Cir.1990). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

## IV.

## ARGUMENTS AND AUTHORITIES

### A.    Introduction to Arguments

In the present case, Plaintiffs have attempted to assert a variety of federal statutory and  constitutional claims against the District. All of these claims purport to arise out of

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' daughter's alleged harassment by fellow high school cheerleaders and her subsequent failure to be chosen for the varsity cheerleading squad. For purposes of this Motion, the District will first address Plaintiffs' failure to state a viable claim for violation of Title IX and then confront her groundless equal protection claims.

**B.    Defendant is Entitled to Summary Judgment as to Plaintiff's Title IX Claim**

Title IX provides that, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied  the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."  20 U.S.C.A. § 1681(a). Nevertheless the leading case on whether student-on-student sexual harassment is actionable under Title IX is *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 119 S. Ct. 1661 (1999), in which the Court held that a school district may be liable:

> where [funding recipients] are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school.

*Id.* at 650, 119 S. Ct. at 1675; *see also Watkins v. La Marque Indep. Sch. Dist.*, 308 Fed. Appx. 781, 2009 U.S. App. LEXIS 1500 (5th Cir. Tex. 2009); *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163,* 315 F.3d 817 (7th Cir. 2003).  In this case summary judgment is proper because:  (1) none of the alleged harassment was gender based; (2) the alleged "sexual harassment" of Plaintiffs' daughter by other female students was not "so severe, pervasive, and objectively offensive that it can be said to deprive of access to educational opportunities or benefits provided by the school"; (3) the Plaintiffs cannot show that their daughter was deprived of any educational opportunity or benefit; and (4) the District was not deliberately indifferent to the allegations of harassment.

**1.    Sanches Was Not Subjected to Gender Based Discrimination**

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

In the present case, Plaintiffs' daughter testified that she was not denied any opportunity to participate in cheerleading on the basis of her sex (Defendant's Appendix p. 339). Title IX clearly states no individual shall be denied an educational benefit or opportunity or be subject to discrimination on the *basis of sex*. 20 U.S.C.A. § 1681(a). Therefore, in order to be actionable under Title IX, the offensive behavior must be based on sex, rather than personal animus or other reasons. *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (11th Cir. 2002); *Benjamin v. Metro. Sch. Dist. of Lawrence Twp.*, 2002 U.S. Dist. LEXIS 8517, *8 (S.D. Ind. Mar. 27, 2002). The use of terms that have some sexual connotation does not necessarily show that there is discrimination based on the plaintiff's sex. Rather the plaintiff must show (1) that the conduct is motivated by sexual desire, (2) such sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility to one sex, or (3) direct comparative evidence about how the alleged harasser treated members of both sexes. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80-81 (1998) (in Title VII context).

In the present case, the actions of the senior girls were not based on Sanches' sex. As the alleged harassment was not based on gender, Defendant is entitled to summary judgment of Plaintiffs' Title IX claim.

**2.    Sanches Was Not Subjected to Severe, Pervasive and Objectively Offensive Harassment by Other Female Students**

Plaintiffs cannot show that the alleged incidents that occurred during Sanches' junior and senior year of high school were "so severe, pervasive, and objectively offensive" that it deprived her "of access to educational opportunities or benefits provided by the school." As the Fifth Circuit noted in *Watkins,* even where behavior is considered "sexual harassment," it may still not rise to the level of the type of "severe, pervasive, and

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

objectively offensive" behavior that is actionable under Title IX. *Watkins,* 308 Fed. Appx. 781, 783; *Gabrielle M.,* 315 F.3d at 822. Therefore, even the behavior of the senior cheerleaders, as described in Plaintiffs' Complaint, while questionably inappropriate, does not rise to the level of actionable peer-on-peer sexual harassment under Title IX:

> Whether gender-oriented conduct rises to the level of actionable "harassment" thus "depends on a constellation of surrounding circumstances, expectations, and relationships," including, but not limited to, the ages of the harasser and the victim and the number of individuals involved. Courts, moreover, must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. *See, e.g.,* Brief for National School Boards Association et al. as *Amici Curiae* 11 (describing "dizzying array of immature … behaviors by students"). Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.

*Davis*, 526 U.S. at 651-52, 119 S. Ct. at 1675 (internal citations omitted); *See, e.g.*, *Watkins,* 308 Fed. Appx. at 784 (involving a male exposing himself, kissing and lifting the skirt of a mentally retarded female student); *Gabrielle M.,* 315 F.3d at 822 (involving a male student openly fondling himself and placing his hand in the pants of several students); *Wilson v. Beaumont Indep. Sch. Dist.,* 144 F. Supp. 2d 690, 694-96 (E.D. Tex. 2001) (involving a single incident of forced sodomy).

As set forth more fully in Section II, Plaintiffs allege numerous incidents of "harassment," some of which they characterize as "sexual harassment." However, Plaintiffs' definition of harassment appears to be any action or even inaction that was not to their liking. Nevertheless, this is not the definition of actionable peer-on-peer sexual harassment

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

under Title IX which is recognized by the United States Supreme Court. One teenage girl calling another teenage girl an ugly name is not severe, pervasive or so objectively offensive that it denies an equal access to education. Neither is thinking about ringing someone's doorbell or spreading rumors about hickeys. Rather, these actions are, in the words of Plaintiffs' daughter, typical "girl-on-girl" caused by parental complaints and rivalry over a boy. (Defendant's Appendix p. 140-149, 220-222, 272-274, 306c, 341). As such, they are not actionable under Title IX.

**3.    Sanches Was Not Deprived of An Educational Opportunity**

The sole "educational opportunity or benefit" which Plaintiffs claim that their daughter was denied, is the "right" to be a varsity cheerleader during her senior year in high school. While the Courts within the Fifth Circuit have not specifically ruled as to whether non-competitive cheerleading is an educational opportunity subject to Title IX, the Office of Civil Rights has held that it is *not* an educational opportunity or benefit for purposes of Title IX.

In a 1975 memorandum from the Department of Health, Education, and Welfare ("HEW") to chief state school officers, superintendents of local educational agencies, and college and university presidents explaining how Title IX applied to athletics programs, the Office of Civil Rights held that "drill teams, cheerleaders, and the like" were extracurricular activities and were not part of a school's "athletic program" within the meaning of Title IX regulations. *See* Office for Civil Rights, HEW, Elimination of Sex Discrimination in Athletic Programs, Memorandum to Chief State School Officers, Superintendents of Local Education Agencies, and College and University Presidents (Sept. 1975).

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Page 21

A subsequent ruling by the Office of Civil Rights upheld the presumption that cheerleading is generally not a covered educational benefit or opportunity for Title IX purposes. However, noting the increase in "competitive" cheer programs, the Office of Civil Rights stated that final determinations as to whether cheerleading in covered by Title IX will be made on a case-by-case basis, in reference to various listed factors. *See* Letter from Dr. Mary Frances O'Shea, National Coordinator for Title IX Athletics, Office for Civil Rights to Mr. David V. Stead, Executive Director, Minnesota State High School League (Apr. 11, 2000). The focus of the identified factors is to determine whether the primary purpose of the activity is athletic competition or the support and promotion of other athletes. *Id.*

In the present case there is no dispute that the cheer program in question was a non-competitive varsity cheer squad[1]. This cheer squad's sole purpose was to support the school's athletic teams. (Defendant's Appendix p. 361, 413). As the alleged "educational opportunity or benefit" about which Plaintiffs claim their child was deprived is not subject to Title IX, Defendants are entitled to summary judgment as to this claim.

**4.    The District Was Not Deliberately Indifferent to Allegations of Harassment**

As the Supreme Court noted in *Davis*, "a recipient of federal funds may be liable in damages under Title IX only for its own misconduct." *Id.* at 640, 119 S.Ct. at 1670. It is not enough for Plaintiffs to show that their daughter was harassed by other female students; rather, they must show that the District was in some way responsible for the harassment:

> If a funding recipient does not engage in harassment directly, it may not be
> liable for damages unless its deliberate indifference subjects its students to

---

[1] Creekview High School has both a varsity cheer squad and a separate competitive cheer squad. Plaintiffs do not claim that Sanches suffered any harassment or disparate treatment with regard to the competitive squad.

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

harassment.  That is, the deliberate indifference must, at minimum, cause students to undergo harassment or make them liable or vulnerable to it.

*Id.* at 644-45, 119 S. Ct. at 1672 (quotations omitted).

Plaintiffs cannot show as a matter of law that the District was deliberately indifferent to their allegations of harassment.  Schools will be held liable for peer-on-peer sexual harassment "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."  *Davis*, 526 U.S. at 648, 119 S. Ct. at 1674.  The Court also noted that "[i]n an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law."  *Id.* at 649, 119 S.Ct. at 1674.

Likewise, in *Gabrielle M.*, the court found that the school district did not act "clearly unreasonably" where the school disciplined or counseled with the male student after each incident; transferred the student to a different class (after repeated discipline did not stop his behavior); and took steps to minimize any contacts between the students at lunch and at recess, including appointing a monitor to oversee the students.  *Id.* at 824-25.  The plaintiffs argued that the school's actions were clearly unreasonable because they did not work, but the court rejected that standard:

> But in arguing that in order not to act with deliberate indifference, the school district must have effectively ended all interaction between the two students to prevent conclusively any further harassment, Gabrielle misunderstands the law.  *Davis* does not require funding recipients to remedy peer harassment.  *Davis* disapproved of a standard that would force funding recipients to suspend or expel every student accused of misconduct.  All that *Davis* requires is that the school not act *clearly unreasonably* in response to known instances of harassment.

*Id*. at 825 (internal citations omitted).  The court noted that the school could take into account administrative burdens and/or the disruption of other students' or teachers'

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

schedules in determining an appropriate response, and that the courts should refrain from second-guessing the school's chosen course of action. *Id.* The court found that the school had not acted "clearly unreasonably" in responding to the complaints, even though the initial steps had not stopped the boys' misbehavior.

In *Wilson*, the court also concluded that the school's actions were not "clearly unreasonable," based on the fact that the teacher kept the two students separated in her classroom, the principal investigated the allegations once the parents complained, and the harasser was eventually transferred to another school. *Wilson,* 144 F.Supp. 2d at 693-94. The court rejected the argument that the fact that the school did not notify the parents immediately and then only began its investigation when the parents complained three days later rendered the school's actions clearly unreasonable:

> Even assuming, however, that Defendants could have taken swifter and more appropriate action, there is no legal requirement of perfection. Although Wilson's parents are understandably upset at not being notified by BISD representatives, no reasonable jury could find that Defendants' actions were "clearly unreasonable."

*Id.* at 694 (internal citations omitted).

The District's response in this case was clearly not one of indifference. (Defendant's Appendix p. 74-77,160, 162, 164, 167-171, 173, 175-185, 187-197, 205-207, 209-214, 217-219, 224, 251). Plaintiffs complaints, no matter how frivolous and how frequent were repeatedly investigated. (Defendant's Appendix p. 74-77,160, 162, 164, 167-171, 173, 175-185, 187-197, 205-207, 209-214, 217-219, 224, 251). When warranted, students were disciplined and removed from classes. (Defendant's Appendix p. 74-77). The serious attention given to the Plaintiffs' complaints caused senior cheerleaders, especially KO and JH to account for virtually every interaction they had with Sanches. Senior cheerleaders felt

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

that they spent their entire senior year in the office responding to Mrs. Laninghams' latest complaint. Indeed, Creekview administrators spent such an inordinate amount of time trying to respond to Plaintiffs that other parents filed grievances claiming that their daughters were being discriminated against in favor of Sanches and the Laninghams. (Defendant's Appendix p. 220-222).

In addition to the thorough investigation and attempted resolution of Mrs. Laninghams' complaints at the campus level, the District allocated three formal grievance hearings concerning the Laninghams' complaints. These hearings were before two different CFBISD administrators who had no prior involvement with the incidents forming the basis for Plaintiffs' complaints and the CFBISD Board of Trustees. (Defendant's Appendix p. 1-40, 236a-236c, 402, 406a). In addition, the District conducted another investigation of Plaintiffs' claims. (Defendant's Appendix p. 1-40, 74-77, 402-406a). Based on the evidence in this matter the problem was not that the District acted unreasonably or with indifference. Rather, the problem was that the Laninghams did not agree with the District's determinations about the validity of their complaints and that they could not force the District to allow Sanches to be a cheerleader. Summary judgment is, therefore, appropriate as a matter of law on the Plaintiffs' Title IX claim.

**C.    Defendant is Entitled to Summary Judgment as to Plaintiffs' Equal Protection Claims**

In the present case, Plaintiffs assert that the 14th Amendment to the United States Constitution gives students the right to avail themselves of an equal opportunity to "audition or tryout for different extra-curricular activities, including cheerleading." The Plaintiffs further claim that by ignoring the systematic harassment and sexual harassment of Sanches, CFBISD denied Sanches an equal opportunity "try out for the cheerleading squad." Original

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Petition ¶ 82-84. With regard to their claims in the cited provisions of the Original Complaint, Plaintiffs have *not* sought to invoke the protection of 42 U.S.C. § 1983. Instead, they later invoke Section 1983 as if it were a completely separate cause of action. Original Petition ¶ 85-86.

Section 1983 is the necessary vehicle through which a plaintiff must assert a constitutional claim. If a plaintiff does not assert 42 U.S.C. §1983, the plaintiff's federal constitutional equal protection claims must be dismissed. *Garrett v. Dallas Public Schools*, 1999 U.S. Dist. LEXIS 19735, *6 (N.D. Tex. 1999); *Hunt v. Smith*, 67 F. Supp. 2d 675, 681 (E.D. Tex. 1999); *see also, Hearth, Inc. v. Department of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980)("the federal courts and this Circuit in particular have been hesitant to find causes of action arising directly from the Constitution.") Based on the clear precedent of this Circuit, any equal protection claim that Plaintiffs are attempting to assert solely under the auspices of the United States Constitution must be dismissed. Likewise, Section 1983 does not create any substantive rights in and of itself. Rather, it provides a method of protecting federal rights secured elsewhere. *Albright v. Oliver*, 510 U.S. 266, 269-71 (1994). However, assuming *arguendo* that Plaintiffs meant to invoke Section 1983 with regard to all of their constitutional equal protection claims, based on the undisputed facts in this case, the District is entitled to summary judgment.

**1.    Plaintiffs' Claims Should Be Dismissed Because Sanches Was Not Deprived of Any Constitutionally Protected Interest**

A person is entitled to the protection of the Fourteenth Amendment *only* if he or she can show deprivation of or intrusion upon a constitutionally protected interest. *Wells v. Hico Independent School District*, 736 F.2d 243 (5th Cir. 1984) *cert. dismissed* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed. 2d 672 (1985). Despite Plaintiffs' assertions to the contrary, neither the

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

United States Constitution nor Section 1983, provide for a right to an "equal opportunity" cheerleader tryout.

Both the federal and state courts in Texas have uniformly held that there is no constitutional right to participation in extra-curricular activities such as cheerleading. *See Nevares v. San Marcos Consol. Indep. Sch. Dist.,* 111 F.3d 25, 27 (5th Cir. 1997)(citing *Walsh v. Louisiana High Sch. Athletic Ass'n,* 616 F.2d 152 (5th Cir. 1980)); *Jesuit College Preparatory Sch. v. Judy*, 231 F. Supp. 2d 520 (N.D. Tex. 2002); *NCAA v. Yeo*, 171 S.W.3d 863 (Tex. 2005); *Spring Branch I.S.D. v. Stamos* 695 S.W.2d 556, 561 (Tex. 1985); *accord*, *In re University Interscholastic League*, 20 S.W.3d 690, 692 (Tex. 2000); *Eanes Indep. Sch. Dist. v. Logue*, 712 S.W.2d 741, 742 (Tex. 1986). A student's interest in participating in interscholastic athletics or any other extracurricular activities "amounts to a mere expectation rather than a constitutionally protected claim of entitlement." *Walsh,* 616 F.2d at 159; *see also Hardy v. University Interscholastic League,* 759 F.2d 1233, 1234 (5th Cir. 1985)("Participation in interscholastic athletics is not an 'interest' protected by the Due Process Clause.")(citing *Niles v. University Interscholastic League,* 715 F.2d 1027, 1031 (5th Cir. 1983), *cert. denied,* 465 U.S. 1028, 79 L. Ed. 2d 691, 104 S. Ct. 1289 (1984).

In *Piwonka v. Tidehaven Independent School Distict*, 961 F. Supp. 169 (S.D. Tex. 1997), the plaintiff also attempted to argue that his daughter had a constitutionally protected interest in a "fair and impartial" cheerleading tryout. The Court summarily dismissed this complaint and stated:

> Next, the Plaintiff alleges that Defendants... are liable under 1983 and the Fourteenth Amendment for violating ... [student's] "constitutional property interest in a fair and impartial cheerleading tryout." This claim is **DISMISSED WITH PREJUDICE** as asinine on its face. There is no such property interest protected by the United States Constitution. Moreover, this Court will not waste its valuable time and limited resources on exploring the

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

constitutional implications of whether or not someone gets to be a cheerleader.

*Piwonka*, 961 F. Supp. 169, 171 (emphasis in original).

Failure to allege deprivation of any protected constitutional interest precludes recovery on all of Plaintiffs' constitutional equal protection claims. Accordingly, Defendants are entitled to summary judgment.

2.    **Plaintiffs' Claims Should Be Dismissed Because There Is No Evidence That the District Differentiated Between Any Suspect Classifications**

A violation of the Fourteenth Amendment's equal protection clause only occurs when the governmental action in question classifies or distinguishes between two or more relevant groups or infringes on a fundamental right. *Sullivan v. University Interscholastic League*, 616 S.W.2d 170, 172 (Tex.1981); *Edwards v. Johnson*, 2000 U.S. App. LEXIS 8191, *18-19 (5th Cir. 2000). Since the alleged actions of the Defendant did not infringe on any fundamental right, the sole basis of Plaintiffs' claims in the present case must rest on some form of classification. *Ibby v. Sullivan*, 737 F.2d 1418, 1422-1423 (5th Cir. 1984). If the challenged action does not appear to classify or distinguish between two or more relevant persons or groups, then the action, even if it had been irrational, does not deny equal protection. *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1985).

In the case at hand, Defendant's alleged action and/or inaction was not targeted at a suspect class, but do not even classify individuals on any basis. Plaintiffs claim that their daughter was just treated unfairly with regard to other teenage girls. As the challenged action does not classify or distinguish between two or more relevant persons or groups, the Equal Protection clause is not implicated.

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**3.    The Plaintiffs Cannot Establish Municipal Liability by Demonstrating a Policy, Custom or Practice that Directly Caused any Injuries to Sanches**

Even if the Plaintiffs can show that (or create a fact issue as to whether) lower-level District employees may have somehow violated her equal protection rights, such a showing would not automatically create liability on the part of the District. A school district cannot be held liable under 42 U.S.C. § 1983 for an injury inflicted by its employees or agents based on a theory of vicarious liability or *respondeat superior* liability. *Board of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 402, 117 S. Ct. 1382, 1388 (1997); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412 (5th Cir.1997 (*en banc*). The Supreme Court set forth its standard on municipal liability in *Monell v. City of New York:*

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978). *See also Owen v. City of Independent,* 445 U.S. 622, 633, 100 S. Ct. 1398, 1407 (1980); *Bennett v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016, 105 S. Ct. 3476 (1985). To hold the entity liable, a § 1983 plaintiff must show that:

(i)    the constitutional violation was caused as the direct result of the execution of an official "custom" or "policy" within the meaning of *Monell*;

(ii)    the custom or policy was approved or sanctioned by the entity's final policymaker; and

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

(iii)    the final policymaker acted with deliberate difference and the custom or policy was the "moving force" behind the violation.

*See Brown, supra.*

### a.    Identification of the final policy maker

The identification of the "final policymaker" is a question of state law for the court. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 124 (1988).  Under Texas law, the final policymaking authority for a school district is the district's board of trustees.  *See* TEX. EDUC. CODE §§ 11.051 & 11.151; *Gonzalez v. Ysleta Indep. School Dist.,* 996 F.2d 739, 759 (5th Cir. 1993).  It is well established in the Fifth Circuit that Texas school boards are not liable for the unlawful acts of even their most high-ranking employees.  *See Jett. v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241 (5th Cir. 1993).  The Plaintiffs must therefore show that the custom or policy upon which they seek to rely to hold the District liable under § 1983 was approved or sanctioned by the CFBISD Board of Trustees.  This they have not and cannot do.

### b.    Identification of the custom or policy

The Plaintiffs must also establish that the CFBISD Board of Trustees actually adopted an unconstitutional policy or that it otherwise knew about or acquiesced in a permanent and deeply embedded, abusive, and unconstitutional practice.  *See City of Houston v. Piotrowski,* 237 F.3d 567, 578-79 (5th Cir. 2001).  Each unlawful custom or policy "must be specifically identified" by the plaintiff.  *Id.* at 579.  A "policy" is a rule or decision that is officially adopted and promulgated by the governing body.  *Monell*, 346 U.S. at 690.  "Policy" implies a course of action "consciously chosen from among various alternatives."  *Stokes v. Bullins,* 844 F.2d 269, 273 (5th Cir. 1988) (citation omitted).  A

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

"custom" or "practice" is a persistent, widespread practice that has become so permanent and well-settled as to constitute a custom or usage with the force of law. *Monell*, 436 U.S. at 690. Isolated violations of law by the entity's employees do not constitute a custom or policy by the final policymaker. *See Piotrowski*, 237 F.3d at 578; *see, e.g., Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (concluding that evidence of 11 prior warrantless arrests did not establish a custom of disregarding Fourth Amendment warrant requirement). The plaintiff must show that the policy maker knew about or had a constructive knowledge of the violations. *Pineda*, 291 F.3d at 330.

### c.    Deliberate indifference and causation

The Plaintiffs must also establish that the custom or policy manifests "deliberate indifference" to whether Sanches' constitutional rights would be violated. *See Gonzalez*, 996 F.2d at 759. Finally, the plaintiff must show that the policy or custom was the "moving force" behind the constitutional violation; there must be a direct causal link between the alleged policy and the claimed constitutional injury. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1989). As the Supreme Court has noted:

> Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any … harm inflicted by a municipal official; for example, [a police officer] would  never have killed Tuttle if Oklahoma City did not have a 'policy' of establishing a police force. But *Monell* must be taken to require proof of a city policy different in kind from this latter example before a claim can be sent to a jury on the theory that a particular violation was 'caused' by the municipal 'policy.'

*City of Canton v. Harris,* 489 U.S. 378 n.9 (1989) (quotation omitted).

To date, the Plaintiffs have failed to identify *any specific* policies, practices, procedures or customs adopted by the CFBISD Board of Trustees that were the *moving force* behind Sanches.' alleged harassment. *See Doe v. Beaumont ISD*, 8 F.Supp. 2d 596, 608

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

(E.D. Tex. 1998) (holding that under § 1983, Plaintiffs have the duty to adduce affirmative evidence of policies, practices, procedures, or customs).  In essence, the Plaintiffs are attempting to assert *respondeat superior* liability against the District for the conduct not of an employee, but for the conduct of students.  This is impermissible under Section 1983. Accordingly, the District is entitled to summary judgment on the Plaintiffs' Equal Protection claims under Section 1983.

## V.
## CONCLUSION

The failure to establish a prima facie case and the absence of any evidence to rebut Defendant's summary judgment proof demonstrating violations of Title IX and Sanches' right to equal protection is fatal to Plaintiffs' case.  To survive summary judgment, Plaintiffs have to convince the Court that a reasonable juror could find that Sanches was subject to peer-on-peer harassment on the basis of her gender. The evidence clearly establishes that any unpleasant interactions between Sanches and the senior cheerleaders were the result of personal animosities and not gender bias. Further the alleged "sexual harassment" of Plaintiffs' daughter was not so severe, pervasive, and objectively offensive that it can be said to deprive Sanches of access to educational opportunities or benefits. Finally, by no stretch of the imagination was the District deliberately indifferent to the allegations of harassment raised by the Plaintiffs.  Accordingly, Defendant is entitled to summary judgment on Plaintiffs' Title IX claims.

Likewise, Plaintiffs' claims for violation of Sanches' equal protection rights are without merit. Sanches has no constitutional right to be a cheerleader or to have an "equal opportunity tryout." Sanches was not a member of classification subjecting her to any unfair

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

treatment. Finally, Plaintiffs have neither alleged nor can they show that the CFBISD Board of Trustees ever adopted any policy or practice that violated Sanches' rights to equal protection. Defendant is entitled to summary judgment on any and all claims that it violated Sanches' right to equal protection.

Respectfully submitted,

s/ Donald G. Henslee
State Bar Number:  09488500
s/ Meredith Prykryl Walker
State Bar Number:  24056487
HENSLEE SCHWARTZ LLP
6688 N. Central Expressway, Suite 850
Fort Worth, Texas  75206
Telephone: (214) 219-8833
Fax: (214) 219-8866
E-mail:  dhenslee@hensleeschwartz.com
Attorney For Defendant
Carrollton-Farmers Branch ISD

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

<u>**CERTIFICATE OF SERVICE**</u>

On June 15, 2009, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, Dallas Division, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and /or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

Harold D. Jones
E. Ashley Goodwin
Law Office of Anderson & Jones, P.L.L.C.
One Galleria Tower
13355 Noel Road, Suite 1900
Dallas, Texas  75240

s/ Donald G. Henslee _____

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**